ACCEPTED
06-14-00106-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
1/12/2015 4:24:12 PM
DEBBIE AUTREY
CLERK

## NO. 06 – 14 – 00106 – CR

IN THE SIXTH DISTRICT COURT OF APPEALS
TEXARKANA, TEXAS

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
1/14/2015 2:04:00 PM
DEBBIE AUTREY
Clerk

## KADEEM BRACKINS RAY

### Appellant,

### v.

## THE STATE OF TEXAS

### Appellee

On appeal from the 124TH District Court, Gregg County, Texas
Trial Court Case No. 42,177-B

## BRIEF OF THE STATE OF TEXAS

## – ORAL ARGUMENT IS SOUGHT ONLY IF GRANTED TO APPELLANT–

CARL L. DORROUGH
Criminal District Attorney

Zan Colson Brown
Texas Bar No. 03205900
Assistant Criminal District Attorney
Gregg County, Texas
101 East Methvin St., Suite 333
Longview, Texas  75601
Telephone: (903) 236–8440
Facsimile:  (903) 236–3701

# TABLE OF CONTENTS

INDEX OF AUTHORITIES……………..…………………………………2

STATEMENT OF FACTS ……………………………………………………4

SUMMARY OF THE ARGUMENT …………………………………………8

ARGUMENT……………………………………………………………...9

    1) *ISSUE ONE: Ample evidence of the extraneous offense was presented so that a reasonable fact finder could have found beyond a reasonable doubt that Ray had committed the extraneous offense. ……………..9*

    *2) ISSUE TWO: Trial Court properly considered evidence of the extraneous offense, because it was proven beyond a reasonable doubt. …………………………………………………………………9*

    a. *The appellant is challenging the sufficiency of the evidence of the extraneous offense of April 4, 2014; the standard of review is whether a reasonable fact finder could have found Ray guilty beyond a reasonable doubt…………………………………………………… 9*

    b. *A reasonable fact finder could have found possession with intent to deliver. …………………………………………………………..11*

    a) *Standard of review on suppression issue is abuse of discretion….. 18*

    c. *The lab report was admitted without objection because the Defendant had stipulated to the admission of documents and waived his right to confrontation. The remedy is a continuance, available to either side in a short-notice situation. …………………………………………..20*

    2) *ISSUE THREE: The trial judge clearly considered the full range of punishment, including probation. …………………………………..23*

    3) *ISSUE FOUR: The trial judge appointed appellate counsel on June 4, 2014, but no new trial motion was filed. ………………………..24*

CONCLUSION AND PRAYER…………………………………………. 26

CERTIFICATE OF SERVICE …………………………………………..27

CERTIFICATE OF COMPLIANCE …………………………………….27

# INDEX OF AUTHORITIES

## **Federal Cases**

*Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781,
   61 L. Ed. 2d 560 (1979) ....................................................................... 9, 10, 11,

## **State Cases**

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) .....................................10

*City of Keller v. Wilson*, 168 S.W.3d 802 (Tex. 2005)............................................10

*Evans v. State*, 202 S.W.3d 158 (Tex. Crim. App. 2006)................................. 11, 13

*Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) ..................................10

*Kyte v. State*, 944 S.W.2d 29 (Tex. App.—Texarkana 1997, no pet.).....................13

*Lassaint v. State*, 79 S.W.3d 736 (Tex. App.—Corpus Christi 2002, no pet.)........13

*Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) ...............................10

*Martinez v. State*, 348 S.W.3d 919 (Tex. Crim. App. 2011) ..................................19

*Matlock v. State*, 392 S.W.3d 662 (Tex. Crim. App. 2013) ...................................10

*Muckleroy v. State*, 206 S.W.3d 746 (Tex. App.—Texarkana 2006, pet. ref'd)......13

*Patrick v. State*, 906 S.W.2d 481 (Tex. Crim. App. 1995).....................................11

*Poindexter v. State*, 153 S.W.3d 402 (Tex. Crim. App. 2005)................................11

*Simmons v. State,* 282 S.W.3d 504 (Tex. Crim. App. 2009) ...................................10

*State v. Moore*, 225 S.W.3d 556 (Tex. Crim. App. 2007)........................................25

*Wyatt v. State*, 23 S.W.3d 18 (Tex. Crim. App. 2000) ............................................19

**<u>State Statutes</u>**

Tex. Health & Safety Code § 481.002 (2013) ........................................................11

**<u>State Rules</u>**

Appellate Procedure, Rule 9 (2012).....................................................................27

## STATEMENT OF FACTS

On February 11, 2012, Kilgore police officer Terry Linder conducted a traffic stop on a white 2003 Chevrolet Impala in Kilgore, Gregg County, Texas. SX 2, at pages 14 of 18. Kadeem Brackens Ray was sitting in the front passenger seat, under which a gun was found. SX2, *Id*. During the booking process, authorities discovered an unknown object in his rectum, and he finally relinquished it only after being transported to Good Shepherd Medical Center. Id. The object was a clear zip lock bag containing 41 small zip-lock bags, each containing heroin. *Id*. He also had a large amount of currency, $1170, which was seized. SX2 at 10 of 18. Two guns were found in the car, a black Glock 27 .40 caliber pistol, serial # SCB340 and a Kimber Ultra CIP II .45 caliber pistol, serial # KU 98639. One pistol was entered as stolen through Athens Police Department SX2, at 7 and 8 of 18.

By the time of trial, on December 5, 2013, the State had decided to proceed only on the possession of heroin with intent to deliver, abandoning the charges of mere possession of heroin and of tampering with physical evidence. See amended indictment. CR 24, 25. He was never indicted for the possession of the firearms. Mr. Ray had decided to stipulate to the evidence and plead guilty, without a plea bargain agreement as to punishment. CR 26, 27.

He applied for probation. CR 23. He was sent for a pre-sentence investigation in which he denied using heroin. At sentencing, however, he claimed to have a small heroin addiction problem. 3 RR 51. He also admitted selling heroin. 3 RR 51-52.

At the end of the guilty plea proceedings, he was warned by the judge as follows:

> Also, if you commit any new offenses between now and the date of sentencing, that could affect what your sentence is. Do you understand?
> THE DEFENDANT: Yes, sir.
> THE COURT: This is, like I said, an open plea, so I don't know what my sentence is going to be; I don't know if it's going to be prison time or probation, I need to hear and listen to all the evidence. But if you -- if -- you not showing up or you committing new offenses between now and then would negatively affect your ability to get probation. Do you understand that?

2 RR 13. Ray answered that he did understand.

On January 9, 2014, acting on an anonymous tip, Dallas Police Officer Chris Cooley entered an open business named Ray's Tobacco[1], smelled marijuana and detained Mr. Ray. 3 RR 34. The sales tax certificate was in the name of Kadeem

---

[1] No warrant was necessary, because the business was registered with the City of Dallas, and as such was open to inspection by law enforcement at any time. 3 RR 34.

Ray. 3 RR 35. During the protective sweep of the back room, Cooley and other officers found a bag of marijuana on top of a futon and a gun beneath the raised futon. 3 RR 36. The area under the futon was large enough for someone to hide there, and the gun was visible when the officer bent down. *Id.* The marijuana weigned 147 grams, slightly over four ounces. 3 RR 37. Ray is facing charges in Dallas for the marijuana, but not the firearm. 3 RR 38.

On May 5, 2014, when he came back for the sentencing phase, the State was alleging that, after the guilty plea and that warning, Mr. Ray had twice more been caught with drugs. In Dallas, on April 4, 2014, he was caught by Dallas Police Officer Chris Cooley with more than 13 grams of heroin. That arrest was recorded on video from a car camera and a body camera. SX 4. The lab report was not prepared by the lab until April 24, and not filed by the State until April 30. The sentencing hearing was May 5, only five days before trial. The lab report was unavailable 20 days before sentencing, because the arrest was only 31 days prior to sentencing, and lab reports take time.

The video shows that Ray stepped out of the car slowly, did not comply with putting his hands on the car, put his left hand into his left pocket, transferred something from his left hand to his right hand while Cooley was trying to handcuff him, then during the take-down somehow (not discernible on the video) expelled the item from his hand to where it landed in the street ten feet away. SX 4.

6

Ray's right to appeal was discussed on the record on May 5, and Ray acknowledged that he understood his appellate rights. CR 30. The judge signed on May 7. CR 30. On May 12, 2014, Ray filed a notice of appeal and wrote a letter claiming indigence, even after the judge had found on the record that he was not indigent. 3 RR 77. The judge apparently changed his mind, and decided to appoint an appellate lawyer. He signed the order appointing counsel on June 4, 2014.

# SUMMARY OF THE ARGUMENT

1) and 2) The extraneous offense which occurred in Dallas on April 4 was proved beyond a reasonable doubt before they were considered by the Court to assess punishment. Ray testified he did not possess it and he did not throw it. That someone else put it there is possible, but not plausible. The defense raised some doubt, but not reasonable doubt. The lab report for the heroin found on April 4 was quickly prepared and signed only twenty days after the offense, which was only eleven days before sentencing. Defense counsel affirmatively said, "No objection." Additionally, he and Ray on December 5, 2013, had stipulated that such reports could come in.

3) The record shows that the judge did consider the full range of punishment, including probation.

4) The judge did not deny Ray his right to counsel, he just made a finding that Ray was not indigent and could retain an appellate attorney. Eventually, the judge changed his mind and appointed counsel, but there is no record of a hearing on the issue, and the appellate record contains no order appointing him because that will be turned in when Mr. Dunn requests payment.

5) The judge's order of consecutive sentences is error. This Court can and shoulmodify the judgment to delete that part of the order.

8

# ARGUMENT

**1) ISSUE ONE: Ample evidence of the extraneous offense was presented so that a reasonable fact finder could have found beyond a reasonable doubt that Ray had committed the extraneous offense.**

**2) ISSUE TWO: Trial Court properly considered evidence of the extraneous offense, because it was proven beyond a reasonable doubt.**

Appellant alleges in his first and second issues that the trial judge erred by considering evidence of an extraneous offense that had not been proved beyond a reasonable doubt.  He argues that the Dallas Police video does not show him throwing the heroin into the street. He further argues that a lab report was not filed 20 days in advance of the trial and should not have been admitted.

### a. The appellant is challenging the sufficiency of the evidence of the extraneous offense of April 4, 2014; the standard of review is whether a reasonable fact finder could have found Ray guilty beyond a reasonable doubt.

A claim of insufficient evidence is measured by the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), 1979 U.S. LEXIS 10 (1979).  The standard of review for sufficiency of evidence is as follows: Viewing the evidence in the light most favorable to the verdict, could any reasonable jury find beyond a reasonable doubt that the State proved all the essential elements of the offense charged? *Id.*

This appellate court will review all the evidence in the light most favorable to the fact-finder's verdict to determine whether any rational jury could have found

the essential elements of knowing or intentional possession of a controlled substance with intent to deliver. A sufficiency review will focus on the quality of the evidence presented. *Brooks v. State*, 323 S.W.3d 893, 917 (Tex. Crim. App. 2010) (Cochran, J., concurring). As the *Brooks* opinion directs, deference is given to the fact finder's duty "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. 307, 1979 U.S. LEXIS 10 (1979)).

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

"[W]hen there are two permissible views of the evidence (one tending to connect the defendant to the offense and the other not tending to connect the defendant to the offense), appellate courts should defer to that view of the evidence chosen by the fact-finder." *Simmons v. State,* 282 S.W.3d 504, 508 (Tex. Crim. App. 2009). "The jury may accept or reject any or all of the testimony of any witness if a reasonable juror could do so" or, more generally, "Evidence can be disregarded whenever reasonable jurors could do so." *Matlock v. State*, 392 S.W.3d 662, 673 (Tex. Crim. App. 2013) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 811 (Tex. 2005)).

10

Circumstantial evidence is as probative as direct evidence, and circumstantial evidence alone can be sufficient to establish guilt. *Patrick v. State*, 906 S.W.2d 481, 488 (Tex. Crim. App. 1995). The jury alone determines the credibility of witnesses as well as the weight to be attached to their testimony. *Jackson*, 443 U.S. at 319. "To prove unlawful possession of a controlled substance, the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband." *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). "'Possession' means actual care, custody, control, or management." Tex. Health & Safety Code § 481.002 (2013).

### b. A reasonable fact finder could have found possession with intent to deliver.

Appellant asserts that Ray did not possess the heroin found in the street. Viewing the evidence in the light most favorable to the verdict, could any reasonable fact finder find beyond a reasonable doubt that the State proved all the essential elements of the offense with which will likely be charged in Dallas County? The State established that Ray was present at the location where drugs were found, but mere presence alone does not establish actual care, custody or control. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006).

11

The State proved that before the defendant was stopped, the heroin was not in the road where it was found. SX 5. Even if the fact finder were to consider the implausible theory that someone else could have placed the heroin in the street, a reasonable fact finder would also consider the fact that there are other independent facts and circumstances which link Ray to the drugs.

Recognized factors linking an accused to contraband include these:

(1) the contraband was in plain view or recovered from an enclosed place; (2) the accused was the owner of the premises or the place where the contraband was found; (3) the accused was found with a large amount of cash; (4) the contraband was conveniently accessible to the accused; (5) the contraband was found in close proximity to the accused; (6) a strong residual odor of the contraband was present; (7) the accused possessed other contraband when arrested; (8) paraphernalia to use the contraband was in view, or found on the accused; (9) the physical condition of the accused indicated recent consumption of the contraband in question; (10) conduct by the accused indicated a consciousness of guilt; (11) the accused attempted to flee; (12) the accused made furtive gestures; (13) the accused had a special connection to the contraband; (14) the occupants of the premises gave conflicting statements about relevant matters; (15) the accused made incriminating statements connecting himself or herself to the contraband; (16) the quantity of the contraband; and (17) the accused was observed in a

12

suspicious area under suspicious circumstances. *Muckleroy v. State*, 206 S.W.3d 746, 749 (Tex. App.—Texarkana 2006, pet. ref'd)(citing *Lassaint v. State*, 79 S.W.3d 736, 740-41 (Tex. App.—Corpus Christi 2002, no pet.); *Kyte v. State*, 944 S.W.2d 29, 31-32 (Tex. App.—Texarkana 1997, no pet.)).

The "logical force of all of the evidence, direct and circumstantial," rather than the number of links, is dispositive. *Evans*, 202 S.W.3d at 162.

The following facts, (referenced to the numbers in the above list) link Ray to the heroin found in the street:

3. The accused was found with a large amount of cash. "He had a little over $2,000. It was $2,571." 3 RR 32.

4. The contraband was conveniently accessible to the accused. On the video he can be seen putting his hand in his pocket, retreiving something, concealing it inside his fist, transferring it from one of his hands to the other. Officer Cooley was trying to cuff him, but in the process, he was able to break free from both Cooley's hands. 3 RR 25. Then he spun and took a couple of large steps toward the street. Officer Cooley took him down and commented repeatedly that the accused had something in his hand or that it was underneath him. SX 4.

5. The contraband was found in close proximity to the accused. Although Cooley thought it would be in his hand or underneath him, when they searched the area within his reach, they found nothing. SX 4. They then expanded their search

13

and located it in the street, approximately 10 feet in front of where he went down. 3 RR 31.

6. A strong residual odor of the contraband was present. (Not heroin, but Cooley testified to an overwhelming odor of marijuana, and the smoke was even visibile on the chest-camera video.) "As we approach, the driver, who ends up being Mr. Ray, rolls down the window, and you can see marijuana smoke billowing throughout the vehicle." 3 RR 11. SX 4 (chest camera). The passenger said they had just smoked some marijuana, but it was gone. SX 4 (car camera).

8. Paraphernalia to package the contraband was in view, or found on the accused. Cooley testified, "And then later, we found some baggies in the [16] vehicle that were the same type of baggies that were found in -- that contained the heroin in the street." 3 RR 15-16.

> The heroin -- the heroin is wrapped in a clear plastic baggie, and it was -- the lab's kind of mushed it down -- it was in a ball. But it's in this little bag inside here, and it was tied in a knot. When we searched the vehicle, we found more of these plastic baggies that are tied in the same knot, same color, same size, same type of material. 3 RR 18.

10, 11, and 12. Conduct by the accused indicated a consciousness of guilt. The accused attempted to flee and made furtive gestures.

Ray was told four times to put his hand on the vehicle, and he never complied. SX4. He refused Cooley's other instruction to take his hand out of his pocket until he found what he was groping for. SX 4. He put whatever he took out

14

of his pocket into his other hand, which was not, at the time, in Cooley's grasp. SX 4. They spun, and took a couple of big steps toward the street before or while Cooley was taking him down. SX 4. He refused to submit to Officer Cooley and handcuffs until he got rid of the heroin. SX4. A reasonable fact finder could infer from his surreptitious movements and from his struggle to avoid handcuffs, and from the fact that his hands were not always visible on the video, that he somehow flicked the 37 grams of heroin into the street.

16. The quantity of the contraband. When Officer Cooley was asked about the quantity, he said this:

Q. "How much is -- I mean, heroin -- what do we have, 13 grams of heroin; is that a large amount or a little amount in Dallas?

A. That's -- that's a large -- that's a large amount. I mean, for personal use, you're talking less than one-tenth of one gram is usually. . ." 3 RR 31; SX 6, lab report.

17. The accused was observed in a suspicious area under suspicious circumstances. This testimony, by linking two offenses on two dates, explains why the officers were suspicious of the area and circumstances:

Q. All right. I'd like to take you back to – what did I say, April 4,
2014? What were you doing?
A. My partner and I that night, we were conducting surveillance
on a smoke shop known as Ray's Tobacco.
Q. All right. And what happened?

A. When we got set up in our location, we observed the smoke shop from a distance. We saw a black Ford Explorer idling out front of the business, it was running. About ten minutes later, the vehicle begins to move; it's leaving the location. 3 RR 8.

The following excerpts explain why Ray's Tobacco was a suspicious area:

Q. All right. I'm going to switch gears now, and I want to talk to you about a different date. . . January 9th of 2013.
A. Yes.
Q. Do you remember that particular date?
A. Yes, I do.
. . .
Q. All right. What happened in this particular case? Why -- why did -- did you have contact with the defendant and why did you have contact with the defendant?
[33] A. Yes. We received a 911 call, the same smoke shop, Ray's Tobacco, someone called from nearby the location. They said that there were persons inside selling narcotics and the place smelled of drugs. 3 RR 32-33.
. . . .
Q. Okay. And did you walk inside?
A. Yes, we did.
Q. And what did you notice when you walked inside?
A. Immediately, the odor -- just overwhelmed by the odor of marijuana. 3 RR 34.

A. The -- the defendant's name is Ray, the store is called "Ray's Tobacco." And then there's also a certificate of occupancy, there's I believe a sales tax permit; that's all in Mr. Ray's name. 3 RR 35.
. . . .
Q. All right. So you found a gun and you found the marijuana. How much marijuana was found?
A. 147 grams. 3 RR 36.

16

Based on the totality of the circumstances, the trial court found that there were enough links between Ray and the heroin to prove that he possessed it with an intent to distribute, and the court's decision was within the zone of reasonable disagreement.

The trial court found, beyond a reasonable doubt, that the heroin in the street belonged to Kadeem Ray. The following excerpt from the record, the judge explains his findings to support a finding that the State proved, beyond a reasonable doubt, the intent to distribute:

> The heroin found in Dallas County is troubling, too. The State, under 37.07, has offered this
> [75]
> evidence for punishment purposes. I have to make a determination whether it's been proved beyond a reasonable doubt. I have your testimony that you didn't have it, this wasn't yours. The State's evidence is that admittedly so, they were targeting you. They pull over a vehicle that has -- that you can see from one of the vehicles, marijuana -- or smoke coming out. Based on the officer's testimony unimpeached, he said it was marijuana smoke.
> They ask you to get out of the vehicle; you comply with that eventually. They ask you to get your hands out of your pockets; you refuse to comply with that. Over and over they ask you. So we have furtive gestures. It gets so bad that you won't cooperate, that they have to try and take -- grab your arms, and they take you down. The officer says the entire time you have something in your hand.
> In the street, near you, they find approximately 13 grams of black tar heroin, still in a ball, still warm, on a busy, busy Dallas street. They find identical packaging in your vehicle.
> When you put that together with you being found in Gregg County, Texas, with 41 baggies of heroin in your rear, I believe, considering the testimony of the
> [76]

17

officers versus your testimony, looking at credibility of the witnesses, the circumstantial evidence, that the State has proven that you possessed this beyond a reasonable doubt.

Part of my reasoning in figuring that is because of your testimony. While you are very smart, Mr. Ray, I think you think you're smarter than you actually are. Because you're also a liar, because you have lied to me on this witness stand. You -- you testified today that you, on and off, had a heroin problem. I found that very interesting because, as I was preparing for this hearing, I reviewed your PSI several times and what you told Ms. Hollie Booth.

You told Ms. Hollie Booth that, when asked what controlled substances or drugs you've done -- let's see, you admitted that you had done alcohol; you admitted you had done marijuana, which we all know you did. But as to cocaine, denied use; crack, denied use; oh, heroin, denied use. Later on, in what drugs you've used in the last 12 months, never used heroin.

Which, in my mind, kind of confirmed what you are; a drug dealer. You're smart enough not to use your product, you just sell it. You come into the streets of Gregg County with 41 bags. That's not -- if you were buying it for individual use, you would have probably bought it in
[77]
a little larger quantity instead of buying it in 41 separate bags. This, with all these little baggies, is probably meant for the folks in Dallas County.
3 RR 74-77.

From the above evidence, the judge could reasonably have determined that The State met its burden under 37.07. The State respectfully requests that this Court defer to the trial court's determination of who was and was not credible,and defer to his findings of fact, which are supported by the record.

a) **Standard of review on suppression issue is abuse of discretion.**

Defense counsel did not file a written pre-trial motion to suppress the arrest on April 4, but he did object and request that the trial court not make a finding on

18

it, claiming that the State had not met its burden under 37.07 and 404 (b). 3 RR 69-70. Defense counsel even said it was in the trial judge's discretion. 3 RR 70. In reviewing a trial court's overarching ruling on a motion to suppress, "an appellate court must apply a standard of abuse of discretion and overturn the trial court's ruling only if it is outside the zone of reasonable disagreement." *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). However, "The appellate court must apply a bifurcated standard of review, giving almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely upon the credibility of a witness, but applying a de novo standard of review to pure questions of law and mixed questions that do not depend on credibility determinations." *Id.* at 922-923.

If there had been a motion to suppress hearing, the trial court would have been the sole judge of witness credibility and weight of witness testimony. *Wyatt v. State*, 23 S.W.3d 18, 23 (Tex. Crim. App. 2000). The appellate court should not disturb trial court findings that are supported by the record. *Id.* This trial court put findings on the record of why he felt the heroin possession had been proved beyond a reasonable doubt.

Facts and circumstances surrounding the finding of the heroin support the trial court's finding that the April 4 possession offense was proved beyond a reasonable doubt. The only "evidence" that Ray did not possess it or dispose of it

19

was his word, and the video that does not conclusively show that he threw it or not. It does not take a major league wind-up to toss 37 grams of a substance a distance of ten feet. It could have been done surreptitiously during the take down, even if not visible on video, because on the video, there are moments when Ray's arms cannot be seen.

Additionally, there is no motive for someone else to place the heroin there. If a police officer were to have placed it there, certainly he would have placed it closer to the point of take down, not ten feet away. If a random passerby were to have dropped it there, he would be giving up with a great deal of value. Why would someone with 37 grams of heroin just toss it out in the street near a large group of police officers? The State prays that trial judge's finding of possession be given the deference it is due.

**c. The lab report was admitted without objection because the Defendant had stipulated to the admission of documents and waived his right to confrontation. The remedy is a continuance, available to either side in a short-notice situation.**

The appellant was admonished in writing about the concessions he was making when he pleaded guilty. CR 28-29. In the written plea admonishments he signed on December 5th, 2013, he agreed to "waive and give up the right to appearance, confrontation and cross-examination of the witnesses and I consent to oral and written stipulations of evidence." CR 29.

The appellant was further admonished orally on that same day:

> THE COURT: Before I can accept your guilty plea, there are several rights I have to go over with you. Those rights are contained on these Written Plea admonishments.  2 RR 5-6.

. . . .

> THE COURT: Also, by pleading "guilty," you waive the rights you have to confront or question the witnesses who could testify against you. The State's not going to have to call any witnesses today to prove their case. Instead they can introduce your Stipulation of Evidence, any offense reports or lab reports or witness statements that they feel are needed, and that, along with your plea of "guilty," will be enough for me to find you guilty. Do you understand that?
> THE DEFENDANT: Yes, sir. 2 RR 7.

As to the timing of the filing of the lab report, one must look at the timing of the offense.  His sentencing date was May 5, 2014. The offense in Dallas where the heroin was found in the street was April 4, 2014. The lab report was signed on April 24, 2014, and filed into this case on April 30. It would have been impossible for the State to comply with the statutory time tables quoted by the Appellant and file it 20 days before the sentencing hearing.

The waiver of any objections to the lab report was done on December 5, both orally and in writing. The State was unable to file it 20 days before the sentencing hearing. The record does not show that anybody requested a

21

continuance, and does not show when the State received the lab report or notified the defense about it.

The case law cited by Appellant, *Deener v. State*, is inapposite. Appellant says it holds that failure to object to a certificate properly filed under Article 38.41 of the Criminal Procedure Code waives the right to object. He distinguishes Deener by pointing out that in Deener, the certificate was timely filed and the State's lab report in the present case was not. See Appellant's brief at 19-20.

As he points out, Ray could not have timely objected because he did not have time to give ten days' notice of his objection. The State has a similar argument: The State could not have given twenty days' notice of the lab report, because twenty days before the sentencing hearing, the lab report did not exist. It was not prepared and signed until April 24. The lab report was finished only 20 days after the offense occurred. The offense occurred on April 4. The only way the State could have given twenty days' notice of a lab report on the 13th of April would be for the lab report to have been completed between April 4 and April 15. Typically, lab reports take significantly longer than 11 days. The date the offense occurred was too close to the date of the sentencing hearing to make compliance with this statute possible.

As to his proposed remedy, a motion for continuance, the State did not file one, but neither did the defendant. If he wanted to object, he would be the one

22

who wanted a continuance, and the record does not show that he filed one. The State, already facing a gap of six months between plea and sentencing, was not likely to want a continuance.

Error, if any, was harmless. The fact that the substance was heroin was never disputed. On the video, Officer Cooley, a man with experience as a narcotics officer, recognized it immediately as heroin, and the car video shows another officer conducting a field test. If one listens carefully to the audio from the body camera recording, one can hear another officer say, "It's heroin." So even without a lab report, there was some evidence that the substance was heroin.

2) **ISSUE THREE: The trial judge clearly considered the full range of punishment, including probation.**

The Appellant asserts in Issue Three that the trial court erred by failing to consider the full range of punishment, by categorically failing to consider probation as a possible sentence. See Appellant's Brief at 22.

The trial judge clearly did consider probation.

"Also I can probate that sentence and put you on probation from anywhere from two years up to ten years." 2 RR 8.

THE COURT: "Now, you have filed an application for probation, and I am bound to consider that [9] application, but I do not have to grant probation. Do youunderstand that?" THE DEFENDANT: "Yes, sir." 2 RR 8-9.

THE COURT: "I don't know if it's going to be prison time or probation, I need to hear and listen to all the evidence." 2 RR 13.

"I now have to decide what is your proper punishment. Do I take a chance and put you on probation, or do I sentence you to the penitentiary? You are a young man, very well spoken, I think you're very intelligent. I admit I have some concerns, however." 3 RR 74.

"You're a drug dealer. Drug dealers do not get probation in this Court. Drug dealers do not get probation in Gregg County." 3 RR 77.

From the above excerpts from the record, the trial court clearly considered probation. He would not have made any of the above statements, even the the last two statements, unless he was considering it. Just because he did not order probation does not mean he did not consider it. Issue three should be rejected.

3) **ISSUE FOUR: The trial judge appointed appellate counsel on June 4, 2014, but no new trial motion was filed.**

The appointment of appellate counsel was delayed, partially because Mr. Ray did not file his notice of appeal and request for appointed counsel at the

24

sentencing hearing. The judge had stated on the record while sentencing him that he would not make a finding of indigence:

> Mr. Larison will consult with you on your appellate rights. I also make a finding that the defendant is not in any way indigent. Because every time he's been arrested, he's had cash; he testified about owning a Mercedes and being able to make bonds in over $200,000. So he is not indigent.

After that finding, Mr. Ray, while still being represented by Mr. Larison, requested in writing that the judge reconsider and appoint him counsel, claiming to be indigent, after all. The judge did reconsider, but did not sign the order appointing counsel, signifying that he had changed his mind, until June 4. The record does not reveal why the order was not signed until then. The record does not reveal what time it was signed. Likewise, the record does not reveal what time it was delivered, or why Mr. Dunn did not become aware of it until the next day. If Mr. Dunn had become aware of the order on the day it was delivered, he could have filed a motion for new trial that day. Amendments to motions for new trial are allowed after the 30-day deadline, if the State does not object. *State v. Moore*, 225 S.W.3d 556 (Tex. Crim. App. 2007)(Te.x Crim. App. 2007.

Finally, the Appellant's brief does not show how Ray was harmed. He does not point out in his brief any error that could have been corrected only by a motion for new trial.

Appellant's fourth issue should be rejected, and the conviction and sentence affirmed.

## CONCLUSION AND PRAYER

Appellant has not proved that, regarding the extraneous offense, the State failed to prove it beyond a reasonable doubt.  Appellant has not proved that the judge failed to consider probation, nor that he was denied due process or assistance of counsel.

For the foregoing reasons, the State prays that the conviction and sentence be affirmed.

Respectfully Submitted,

/s/*Zan Colson Brown*
Zan Colson Brown
Texas Bar No. 03205900
Assistant District Attorney
101 East Methvin St., Suite 333
Longview, TX  75601
Telephone: (903) 236–8440
Facsimile:  (903) 236–3701

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the above and foregoing has been forwarded to all counsel of record by electronic deliver or hand delivery to:

Mr. Lew Dunn
P.O. Box 2222
Longview, Texas 75606
this 12th day of January, 2015.

/s/ *Zan Colson Brown*
Zan Colson Brown
Assistant District Attorney

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing document complies with Texas Rules of Appellate Procedure, Rule 9 (2012) regarding length of documents, in that exclusive of caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix, it consists of 5,578 words.

/s/*Zan Colson Brown*
Zan Colson Brown
Assistant Criminal District Attorney